In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 05-4788

SOPHIE A. SZOPA,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 1751—**William J. Hibbler**, *Judge.*

———————

SUBMITTED JULY 31, 2006—DECIDED AUGUST 21, 2006

———————

Before EASTERBROOK, WOOD, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Our first opinion, 453 F.3d 455 (7th Cir. 2006), not only affirmed the district court's decision but also concluded that the appeal is frivolous and granted the United States' motion for sanctions. We expressed skepticism, however, about the Tax Division's request to set the presumptive sanction in tax-protest cases at $8,000, which it says is $3,000 less than the average expense of handling frivolous appeals. We asked the parties to file additional memoranda concerning the legal services for which the United States must pay to defend such appeals. The government's response is packed with data but does not allay our concerns.

Our first opinion used a back-of-the-envelope approach to calculate that it costs the Tax Division about $1,136 per day (or $142 per hour) for an experienced appellate lawyer, including all support expenses. The statement that each appeal costs $11,000 thus implied that it takes about two working weeks to brief a frivolous appeal, a number we found hard to believe. The response shows that our estimate came pretty close: the Department of Justice uses $139 per hour as the full cost (including fringe benefits and overhead) for lawyers who staff the Tax Division's Appellate Section. Thus our inference—that the Appellate Section devotes something near 10 days to each frivolous appeal—turns out to be correct. The response tells us that the average is 89 attorney hours, or 11+ work days per appeal. Szopa's appeal required 53 attorney hours (45 by the attorney who wrote the brief and 8 hours for review within the Appellate Section) plus 8 hours of paralegal time at $83 per hour, for a total of $8,031. And this for a 15-page brief. That's about four hours a page, or 53 words per hour at a cost of $2.80 per word. (The brief contained about 2,800 words.)

In one respect the response is reassuring. We asked why the cost of handling frivolous appeals had risen so fast since 1985, when the presumptive sanction of $1,500 was adopted. It turns out that the $1,500 was based on the average award by courts of appeals rather than the Tax Division's actual costs. So the proposed increase (from $2,700 in 2005 dollars to the $11,000 average cost, and the $8,000 per appeal sanction that the Department now wants us to adopt) no longer looks like a rapid decline in the Tax Division's productivity. What is not reassuring is the fact that productivity appears to have been low all along. Investing 11 days (on average) of legal time per frivolous appeal is not prudent; what makes an appeal *frivolous*, after all, is that the arguments have been presented and rejected before, and tax-protest appeals entail arguments

rejected *many times*. Why does it take 89 hours on average (or 53 hours in Szopa's case) to prepare a brief pointing this out?

A court asked to award sanctions that compensate the prevailing party for attorneys' fees must ensure that the time was reasonably devoted to the litigation. See, e.g., *Budget Rent-a-Car System, Inc. v. Consolidated Equity LLC*, 428 F.3d 717 (7th Cir. 2005) (holding that 13.7 hours of high-priced time to prepare and file a motion to dismiss a frivolous appeal was excessive). The Tax Division's rates are less than those of tax partners at private firms, but the time devoted to frivolous appeals still must be reasonable if the other side is to be called on to pay for it.

The Department's memorandum observes: "We have . . . long seen it as our responsibility, even in the most frivolous cases, to spend the time necessary to parse through [sic] the often convoluted and unintelligible arguments of tax protesters so that their cases might be presented to the court in as coherent a fashion as possible. Lawyers in the private sector, who are not held to such a high standard by the courts, are under no similar compunction." The point is well taken, and the assistance is much appreciated. Still, the lawyers of the Tax Division are *specialists*, and when a given point is made and rejected over and over—often enough to be called frivolous when advanced again—it is not asking too much for the Tax Division to find a lawyer who has seen it before and can prepare a response in short order. This is why our first opinion remarked that half of the brief must have come from a word processor's glossary: The relation between a District Court and the Tax Court under 26 U.S.C. §6330(d)(1) is hardly novel. We benefited from a compact statement of that relation in the appellee's brief, but this cannot have been the first time that the Tax Division prepared such a recap.

None of Szopa's filings was unclear. Her brief was neatly typed (unlike the scrawled longhand that we encounter

all too often) and took only 9 double-spaced pages to present both the facts and the argument. Szopa's brief made it pellucid that everything depends on her assertion that the federal income tax is not, after all, on "income" but is on "employment" and that non-corporate citizens of the United States need not pay "income taxes." If that proposition is wrong—as it is—then affirmance follows directly. The district judge required less than one page to dispose of the litigation. No explication was necessary. Yet the Tax Division tells us that it *still* took 53 hours of tax specialists' time to prepare and review a 15-page brief. That cannot be understood as an investment necessary to translate a tax protester's gibberish into legal English.

The Tax Division has explained why the amounts chosen as presumptive sanctions in 1986 and 1996 should not be used as the basis for sanctions today. It has not adequately justified a sanction that rests on an average of 89 hours of legal time (the $11,000 figure) or even 57.5 hours (which is what the requested $8,000 sanction works out to). Thirty hours is more plausible, and even this strikes us as generous to the Tax Division. So we adopt a presumptive sanction of $4,000 for a frivolous tax appeal. The choice is necessarily arbitrary; and to the extent there is doubt about whether this represents a reasonable average investment in legal time we resolve it in favor of the victim rather than the perpetrator of frivolous litigation. Consistent with our first opinion the presumptive award will be doubled for a recidivist litigator. The Department is free to request more when the case is especially complex or the tax protester's argument especially long and opaque.

Szopa is a recidivist, so her final sanction is $8,000, payable immediately. We told Szopa in the first opinion that if the interim award ($5,400) was not paid within 10 days, she would be barred from filing further civil suits in the courts of this circuit under the terms of *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.

1995). She has not paid one cent, so the *Mack* order takes effect today and will remain in force until the sanction has been satisfied, though as *Mack* provides a motion for modification may be filed after two years.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*